Sirois v. Business Express, Inc.     CV-95-136-SD  07/26/95 P

UNITED STATES DISTRICT COURT FOR THE

                        DISTRICT OF NEW HAMPSHIRE


<u>Marion Sirois</u>

     v.                                    Civil No. 95-136-SD

<u>Business Express, Inc.</u>


                          **O R D E R**


     In this civil action, plaintiff Marion Sirois claims
defendant Business Express, Inc., acted in breach of both written
and oral employment contracts when it terminated her from the
positions of flight attendant and ground employee.  Plaintiff
seeks recovery for (1) loss of employment; (2) loss of
compensation; (3) loss of seniority; (4) loss of standing in the
airline industry; and (5) loss of salary scale.

     Presently before the court is plaintiff's motion for remand,
to which defendant objects.


                        <u>Factual History</u>

     Sirois was employed as a flight attendant and ground
employee for Business Express until September 2, 1994, when her
position was terminated.  Writ of Summons, Count I.  Sirois v.
alleges that defendant breached a written employment contract by

denying her "the opportunity to return to [her position as a flight attendant] or apply to other jobs in the defendant's service."  Id.  Plaintiff further asserts that defendant's conduct was

> in breach of the express written terms set
> forth in Business Express's employee manual
> which promised that employees will retain
> seniority for each position they hold during
> their tenure with defendants, and in breach
> of Business Express personnel procedure which
> mandates write-ups and warnings prior to
> dismissal and provides for a grievance
> procedure and investigations under the rules
> of the Association of Flight Attendants; and
> in further breach of the employee manual's
> express written promise that all employment
> openings are open to any Business Express
> employee that wishes to apply . . . .

Id. (emphasis added).

Irrespective of whatever rights she may have held under a written employment contract, Sirois additionally maintains that certain oral promises of employment were made to her by, among others,[1] Townsend Sausville, Director of Operations at Business Express.  According to Sirois, all promises essentially provided "that if she were willing to assume temporarily a ground position and perform tasks and services necessary to defendant's business, she would be allowed to return to work as a flight attendant

---

[1]Sirois asserts that similar oral promises were made by John O'Brien and Ed McGill, individuals who allegedly held "positions of authority" within Business Express.  Writ of Summons, Count II.

2

should Business Express eliminate her ground job, without loss of seniority or any other benefits . . . ." Writ of Summons, Count II.

Procedural History

Plaintiff initiated the instant action by writ of summons filed in Rockingham County (New Hampshire) Superior Court on March 8, 1995. Thereafter defendant removed the action to this court on March 20, 1995, pursuant to 28 U.S.C. § 1441(b), basing the court's jurisdiction upon the federal questions raised in both Counts I and II. By motion filed March 23, 1995, plaintiff requests this court to remand the proceedings to Rockingham County Superior Court.

Discussion

1. Motion to Remand Standard

"It is, of course, familiar law that the right of removal being statutory, a suit commenced in a state court must remain there until cause is shown for its transfer under some act of Congress." Great N. Ry. Co. v. Alexander, 246 U.S. 276, 280 (1918) (citation omitted). Although Congress has created a removal mechanism, such congressional acts are subject to strict construction by the courts. See, e.g., Shamrock Oil & Gas Corp.

3

v. Sheets, 313 U.S. 100, 108 (1941) ("the policy of the successive acts of Congress regulating the jurisdiction of federal courts is one calling for the strict construction of such legislation").

However, if a state court action is subsequently removed to federal court,

> the plaintiff may, by a motion to remand
> . . ., take issue with the statements in the
> petition. If he does, the issues so arising
> must be heard and determined by the District
> Court, and . . . the petitioning defendant
> must take and carry the burden of proof, he
> being the actor in the removal proceeding.

Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921) (citations omitted). Thus, in order to withstand the instant motion to remand, defendant must demonstrate that the asserted basis for removal satisfies the statutory prerequisites.

2. Propriety of Removal

Defendant asserts that removal is appropriate under 28 U.S.C. § 1441(b)[2] since plaintiff's claims either arise under the

---

[2]Section 1441(b) provides, in relevant part,

> Any civil action of which the district
> courts have original jurisdiction founded
> on a claim or right arising under the
> Constitution, treaties or laws of the United
> States shall be removable without regard to
> the citizenship or residence of the parties.
> . . .

4

Railway Labor Act (RLA), 45 U.S.C. §§ 151-164 (1986),[3] or are preempted thereby. As such, the court is vested with jurisdiction pursuant to 28 U.S.C. §§ 1331[4] and 1337.[5]

Sirois, however, contends that "[t]he Complaint sounds only in the common law of contracts, . . . [and] [a]ny references in the Complaint to grievance procedures and other labor matters were submitted not as claims, but only as parenthetical material

---

28 U.S.C. § 1441(b) (1994).

[3]Air carriers such as defendant are subject to the RLA, pursuant to 45 U.S.C. § 181, which provides:

> All of the provisions of subchapter I of this chapter, except section 153 of this title, are extended to and shall cover every common carrier by air engaged in interstate or foreign commerce, and every carrier by air transporting mail for or under contract with the United States government, and every air pilot or other person who performs any work as an employee or subordinate official of such carrier or carriers, subject to its or their continuing authority to supervise and direct the manner of rendition of his service.

45 U.S.C. § 181 (1986).

[4]Section 1331 provides, "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (1993).

[5]Section 1337 provides, in relevant part, that "[t]he district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce . . . ." 28 U.S.C. § 1337(a) (1993).

to lend additional credence to plaintiff's claim that defendant's stated reasons for discharging her were pretextual." Plaintiff's Motion for Remand ¶¶ 2-3. Thus, although "plaintiff has no objection to litigating this matter in federal court," remand to the state court is appropriate as "no federal questions, as required by 28 U.S.C. §§ 1331 and 1337, are here presented . . . ." Id. ¶ 5.[6]

### a. "Well-Pleaded" Complaints and the Effect of Preemption

A case arises under the Constitution or laws of the United States if "'its correct decision depends upon the construction of either.'" Gold-Washing & Water Co. v. Keyes, 96 U.S. 199, 201 (1878) (quoting Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 379 (1821)). According to the "well-pleaded complaint" rule, "'[w]hether a case is one arising under the Constitution or a law or treaty of the United States, in the sense of the jurisdictional statute, . . . must be determined from what necessarily appears in the plaintiff's statement of [her] own

---

[6]As the Supreme Court has noted, however, "'courts will not permit plaintiff to use artful pleading to close off defendant's right to a federal forum . . . [and] occasionally the removal court will seek to determine whether the real nature of the claim is federal, regardless of plaintiff's characterization.'" Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 397 n.2 (1981) (quoting CHARLES A. WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 2D § 3722, at 266, 268-70 (1985)).

claim . . . unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose.'" Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 10 (1983) (quoting Taylor v. Anderson, 234 U.S. 74, 75-76 (1914)); accord Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987).

Ordinarily a defense of preemption is insufficient to confer removal jurisdiction. However, "[a]s an exception [to] the well-pleaded complaint rule, there are circumstances where 'Congress may so completely preempt a particular area' that any complaint arising in that area is 'necessarily federal in character.'" Fitzgerald v. Codex Corp., 882 F.2d 586, 587 (1st Cir. 1989) (quoting Metropolitan Life Ins. Corp. v. Taylor, 481 U.S. 58, 63-64 (1987)); see also Caterpillar, Inc., supra, 482 U.S. at 393 ("Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law."). "The purpose of this exception, allowing a defense of federal pre-emption to serve as a basis for removal, is to prohibit a plaintiff from defeating removal by failing to plead necessary federal questions in a complaint." Cawthard v. Flagship Airlines, Inc., 863 F. Supp. 1567, 1572 (S.D. Fla. 1994) (citing Deford v. Soo L.R. Co., 867 F.2d 1080,

7

1084 (8th Cir.), <u>cert. denied</u>, 493 U.S. 927 (1989)).

        b.  <u>Complete Preemption by the RLA</u>

        "The RLA, which was extended in 1936 to cover the airline industry, see Act of Apr. 10, 1936, ch. 166, 49 Stat. 1189; 45 U.S.C. §§ 181-188, sets up a mandatory arbitral mechanism to handle disputes 'growing out of grievances or out of the interpretation and application of agreements concerning rates of pay, rules, or working conditions,'" <u>Hawaiian Airlines, Inc. v. Norris</u>, 512 U.S. ___, ___, 114 S. Ct. 2239, 2241 (1994) (quoting 45 U.S.C. § 153 First (i)); <u>see also</u> <u>Westbrook v. Sky Chefs, Inc.</u>, 35 F.3d 316, 317 (7th Cir. 1994) ("The RLA governs relations between employers that are rail or air carriers . . . and their union employees."); <u>Anderson v. American Airlines, Inc.</u>, 2 F.3d 590, 594 (5th Cir. 1993).  In order to foster stability in labor-management relations, "the Act establishes a mandatory arbitral mechanism for 'the prompt and orderly settlement' of two classes of disputes[--major and minor]." <u>Norris</u>, <u>supra</u>, 512 U.S. at ___, 114 S. Ct. at 2243 (quoting 45 U.S.C. § 151a).

        Whereas "[m]ajor disputes relate to '"the formation of collective bargaining agreements or efforts to secure them,"'" <u>id.</u> at ___, 114 S. Ct. at 2244 (quoting <u>Consolidated Rail Corp.</u>

8

v. Railway Labor Executives' Ass'n, 491 U.S. 299, 302 (1989) (Conrail) (quoting Elgin, J. & E.R. Co. v. Burley, 325 U.S. 711, 723 (1945))), "[d]isputes between employees and Carriers arising 'out of the interpretation or application of the collective bargaining agreement. . . [are] commonly referred to as "minor disputes,"'" Stephens v. Norfolk & W. Ry. Co., 792 F.2d 576, 579-580 (6th Cir. 1986) (quoting Kaschak v. Consolidated Rail Corp., 707 F.2d 902, 904 (6th Cir. 1983)) (alteration in Stephens).[7] All "minor disputes" must be settled pursuant to the arbitration procedures established by the RLA. Andrews v. Louisville & Nashville R.R. Co., 406 U.S. 320, 322 (1972); see also Magnuson v. Burlington Northern, Inc., 576 F.2d 1367 (9th Cir.), cert. denied, 439 U.S. 930 (1978).

Although "[n]ot all individual agreements between an airline and an employee raise a federal question under the RLA," Kidd v. Southwest Airlines Co., 891 F.2d 540, 543 (5th Cir. 1990) (citations omitted), "a state law claim can involve a minor dispute and hence be pre-empted by the RLA if the state law claim

---

[7]"The distinguishing characteristic of a minor dispute is that it 'may be conclusively resolved by interpreting the existing [collective bargaining] agreement.'" Anderson, supra, 2 F.3d at 595 (quoting Conrail, supra, 491 U.S. at 305); see also Cawthard, supra, 863 F. Supp. at 1570 ("The RLA establishes a mandatory and comprehensive framework for the final and binding resolution of all grievances over the interpretation of existing collective bargaining agreements.").

9

is '"inextricably intertwined" with the terms and conditions of employment under the collective bargaining agreement,'" Anderson, supra, 2 F.3d at 595 (quoting Morales v. Southern Pacific Transp. Co., 894 F.2d 743, 745 (5th Cir. 1990)); accord Andrews, supra, 406 U.S. at 323-24 (characterization of claim as state law cause of action does not exclude it from the RLA's mandatory grievance procedures). "However, states can provide workers with substantive rights independent of the collective bargaining agreement and causes of action to enforce such rights are not pre-empted by the RLA." Taggart v. Trans World Airlines, Inc., 40 F.3d 269, 272 (8th Cir. 1994) (citations omitted).

In Andrews v. Louisville & Nashville R.R., the plaintiff brought a wrongful discharge action in state court against the defendant railroad company. The action was subsequently removed to federal court and dismissed on the grounds that the plaintiff failed to exhaust administrative remedies. Andrews, supra, 406 U.S. at 321. In affirming the dismissal, the Supreme Court noted that unless modified by "some sort of statutory or contractual standard . . . the traditional common-law rule that a contract of employment is terminable by either party at will [applies]." Id. at 324. Accordingly, the Court reasoned that since plaintiff's right not to be discharged arose from a collective bargaining agreement, "petitioner's claim, and respondent's disallowance of

it, [stemmed] from differing interpretations of the collective-bargaining agreement." Id. As such, the action was deemed a "minor dispute" subject to compulsory administrative remedies under the RLA. Id.

Revisiting the question, the Supreme Court recently narrowed the scope of federal preemption under the RLA. See Norris, supra, 512 U.S. at ___, 114 S. Ct. at 2239; accord Taggart, supra, 40 F.3d at 272 (Norris narrowed the scope of federal preemption under the RLA); Westbrook, supra, 35 F.3d at 317-18 (Norris overrules prior preemption standard). The Norris court read Andrews, supra, 406 U.S. at 320, to hold state-law claims of wrongful termination preempted by the RLA "not because the RLA broadly pre-empts state law claims based on discharge or discipline, but because the employee's claim was firmly rooted in a breach of the [collective bargaining agreement] itself." Norris, supra, 512 U.S. at ___, 114 S. Ct. at 2246. Thus, "a state-law cause of action is not pre-empted by the RLA if it involves rights and obligations that exist independent of the collective-bargaining agreement." Id. at ___, 114 S. Ct. at 2247.[8] The state-law claim is only preempted where its

_____

[8]This preemption standard, the Court noted, is "virtually identical to the pre-emption standard the Court employs in cases involving § 301 of the [Labor Management Relations Act], 29 U.S.C. § 185." Norris, supra, 512 U.S. at ___, 114 S. Ct. at 2247 (footnote omitted). Under said standard, district courts

11

resolution "depends upon an interpretation of the collective bargaining agreement." Id. at ___, 114 S. Ct. at 2248.

Examples of such "state-law substantive protections" considered to be outside any RLA labor agreement include claims based on:

> [(1)] a state law prohibiting employers from firing employees "in violation of public policy or in retaliation for whistleblowing," . . . even if the CBA in question contained provisions that could be interpreted to justify the termination[; . . . (2)] a state law requiring cabooses on all trains . . . even if the CBA required cabooses only on some trains[; . . . and (3)] a state law "regulating the number of workers required to operate certain [railroad] equipment" . . . even if the railroad's agreement with the union allows it to employ a smaller crew.

Hirras v. National R.R. Passenger Corp., 44 F.3d 278, 282 (5th

---

are required to utilize the following two-part inquiry:

> First, the district court must examine whether proof of the state law claim requires interpretation of collective bargaining agreement terms. Second, the court must ascertain whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law. If the right both is borne of state law and does not invoke contract interpretation, then there is no preemption. However, if neither or only one criterion is satisfied, section 301 preemption is warranted.

DeCoe v. General Motors Corp., 32 F.3d 212, 216 (6th Cir. 1994) (citing Terwilliger v. Greyhound Lines, Inc., 882 F.2d 1033, 1037 (6th Cir. 1989), cert. denied, 495 U.S. 946 (1990)) (other citations omitted).

12

Cir. 1995) (citations omitted).[9]  Thus, in answering the preemption question--and by implication the propriety of remand-- "the critical question is one of characterization--does the state law claim involve interpretation or application of the collective bargaining agreement or, stated another way, is the state law claim independent of the collective bargaining agreement."  Id.

The court finds the instant action to be more akin to Andrews than Norris and the examples cited therein.  To begin, under New Hampshire law, "the at-will status of an employment relationship is 'one of prima facie construction' . . . ." Butler v. Walker Power, Inc., 137 N.H. 432, 435, 629 A.2d 91, 93 (1993) (quoting Panto v. Moore Business Forms, Inc., 130 N.H. 730, 739, 547 A.2d 260, 267 (1988)).  That plaintiff presently styles her complaint in state-law breach of contract terms does not necessarily place this matter beyond the preemptive reach of the RLA.[10]  The grievance procedures to which plaintiff refers

_____

[9]The Court contrasted these examples with the situation in Andrews, indicated that the only source of the Andrews plaintiff's right not to be discharged was the terms of the CBA, and concluded that the provisions of the RLA were properly held to preempt any state law causes of action based on such discharge.  Norris, supra, 512 U.S. at ___, 114 S. Ct. at 2246.

[10]The court pauses here to note that plaintiff brought a breach of contract claim in state court contending, inter alia, that defendant failed to follow the rules of the Association of Flight Attendants relating to grievance and investigatory procedures.  Although plaintiff now contends that such language was mere surplusage, such a construction is seemingly belied by

13

bear a "not obviously insubstantial" relationship to the collective bargaining agreement, Magnuson, supra, 576 F.2d at 1369, interpretation of which the court finds will be necessary in order to determine plaintiff's employment rights.

Because plaintiff's claims in Count I cannot be resolved without interpreting the CBA, the court further finds and rules that plaintiff's claim is a "minor dispute" under the RLA. E.g., id. at 1370 ("Under these circumstances, the controversy is a minor dispute within the exclusive province of the grievance mechanisms established by the R.L.A.") (citations omitted). To deny removal under these circumstances would be to ignore Congressional intent--promotion of stability in transportation industry labor relations. See, e.g., Schroeder v. Trans World Airlines, Inc., 702 F.2d 189, 191 (9th Cir. 1983) ("The application of [the RLA] and the necessity of its interpretation establish the existence of a federal question as an essential element of plaintiff[']s cause of action, providing the basis for removal."); Hages v. Aliquippa & Southern R. Co., 427 F. Supp. 889, 894 (W.D. Pa. 1977) ("To deny removal would jeopardize federal labor policies and encourage the proliferation of varying

plaintiff's prayer for relief, which includes claims for lost seniority, standing in the airline industry, and salary scale-- terms whose import and meaning, if any, can be ascertained only by reference to the CBA.

14

and inconsistent state court constructions of collective bargaining agreements.").

Accordingly, the court finds that it has federal question jurisdiction over Count I of plaintiff's complaint as it arises under the RLA and that removal, therefore, was appropriate.

3. "Minor Disputes" and Subject Matter Jurisdiction

Ordinarily, resolution of the motion sub judice would completely discharge the court's current obligation. However, "[i]t is too elementary to warrant citation of authority that a court has [a further] obligation to inquire sua sponte into its subject matter jurisdiction, and to proceed no further if such jurisdiction is wanting." In re Recticel Foam Corp., 859 F.2d 1000, 1002 (1st Cir. 1988); Cf. Rule 12(h)(3), Fed. R. Civ. P. ("Whenever it appears . . . that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

In section 2.b., supra, plaintiff's breach of written contract action was found to be a "minor dispute" as that term is defined in the RLA and interpretive case law. Said finding has the practical effect of: (1) conferring federal question jurisdiction upon the court such that removal from state court is appropriate, due to the RLA's complete preemption of state contract law in this matter, yet thereafter (2) divesting the

15

court of subject matter jurisdiction on account of the RLA's prescribed grievance mechanism for settlement of all "minor disputes." See, e.g., Norris, supra, 512 U.S. at ___, 114 S. Ct. at 2244 ("[A] determination that [an employee's] complaints constitute a minor dispute would pre-empt his state law actions."); Gay v. Carlson, ___ F.3d ___, ___, No. 93-9252, 872, 1995 WL 411996, at *3 (2d Cir. July 12, 1995) ("any state-law claim determined to be a 'minor dispute' within the meaning of the Railway Labor Act is preempted, and a court is without subject matter jurisdiction to entertain a claim of that sort") (citation omitted); Schroeder, supra, 702 F.2d at 192 (court lacked subject matter jurisdiction because claim was a "minor dispute" under the RLA).

Without subject matter jurisdiction, this court can proceed no further. Accordingly, the entire matter before the court is herewith dismissed without prejudice.[11]

---

[11]Although the allegations incorporated into Count I are "minor disputes" subject to arbitration under the RLA, such is not the case with the breach of oral contract allegations contained in Count II. Insofar as Count II raises a pure question of state law and does not require the court to construe the CBA, said claim, lacking the requisites for federal adjudication, is not subject to compulsory arbitration under the RLA and thus may be raised properly in state court. See Cawthard, supra, 863 F. Supp. at 1570-71 (claims pertaining solely to an alleged oral employment contract do not involve interpretation of the collective bargaining agreement, thus such claims lack independent jurisdictional basis and court may decline supplemental jurisdiction over same).

16

## Conclusion

For the reasons set forth herein, plaintiff's motion for remand (document 5) is denied. Insofar as plaintiff's complaint raises issues subject to compulsory arbitration under the Railway Labor Act, the court is without jurisdiction to further adjudicate the matter. Accordingly, this litigation is herewith dismissed without prejudice.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

July 26, 1995

cc:   James H. Gambrill, Esq.
      Susannah Colt, Esq.
      Peter Bennett, Esq.

17