In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-1129

CONSTANCE HUGHES,

*Plaintiff-Appellant*,

*v.*

UNITED AIR LINES, INC.,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 C 6558—**Elaine E. Bucklo**, *Judge*.

ARGUED JANUARY 11, 2011—DECIDED FEBRUARY 8, 2011

Before EASTERBROOK, *Chief Judge*, and CUDAHY and POSNER, *Circuit Judges*.

EASTERBROOK, *Chief Judge*.  United Air Lines recalled flight attendant Constance Hughes from furlough in October 2004. Physically unable to work, she commenced a medical leave. The collective bargaining agreement between United and the flight attendants' union permits workers to retain seniority for three years of

injury or illness. When that time was almost up, United told Hughes that she must report to duty. The airline's physician cleared her for work. She completed requalification training. But, according to Hughes, less than a week before her first flight assignment, she slipped and fell at United's training facility, suffering a new injury so severe that she could not fly. United then ended her employment. Hughes says that this constituted retaliation for the workers' compensation claim she made on account of the new injury; for its part, however, United characterizes the termination as a routine application of the collective bargaining agreement's limit on how long an inactive employee can retain seniority.

Hughes sued in a state court of Illinois, which treats as tortious any materially adverse response to a workers' compensation claim. See 820 ILCS 305/4(h); *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 384 N.E.2d 353 (1978); *Clemons v. Mechanical Devices Co.*, 184 Ill. 2d 328, 704 N.E.2d 403 (1998). United removed the proceeding to federal court under the federal-question jurisdiction. See 28 U.S.C. §§ 1331, 1441(b). Hughes's complaint rests entirely on state statutes and decisions; it does not mention federal law. United contended, however, that framing a claim under state law is impossible—that the Railway Labor Act, which despite its name also applies to labor relations of airlines, so occupies the field that state law is "completely preempted" and that any claim must rest on federal law.

"Complete preemption" is a misleadingly named doctrine that applies to subjects over which federal law is

so pervasive that it is impossible to make out a state-law claim, no matter how careful the pleading. Several branches of labor-relations law come within this description. See, e.g., *Avco Corp. v. Machinists Union*, 390 U.S. 557 (1968). Preemption normally is a defense, which must be pleaded and established in the court where the litigation began. But "complete preemption" is not a defense. It means that the claim itself arises under federal law. See *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1 (1983); *Lehmann v. Brown*, 230 F.3d 916 (7th Cir. 2000). If "complete preemption" applies to Hughes's retaliatory-discharge suit, then United was entitled to remove it; but if United's argument is a species of ordinary preemption, then all it has is a defense that must be asserted in state court, unless the diversity jurisdiction supports removal.

*Graf v. Elgin, Joliet & Eastern Ry.*, 790 F.2d 1341 (7th Cir. 1986), holds that a retaliatory-discharge suit against an employer governed by the Railway Labor Act is completely preempted, allowing removal. We gave two principal reasons. First, the RLA establishes its own method of adjudication for claims that concern application of a collective bargaining agreement. 45 U.S.C. §§ 151a, 184. This method, which requires disputes about the meaning or application of a labor agreement to be submitted to a systems board of adjustment, is incompatible, we thought, with state-court litigation whose disposition could well depend on the meaning of a collective bargaining agreement. 790 F.2d at 1344–45. Second, we noted that appellate authority strongly favored a complete-preemption approach. Although we conceded

that the first reason on its own was inconclusive, we thought it inappropriate to create a conflict. *Id*. at 1346. The district court concluded that *Graf* controls and denied Hughes's motion to remand. 675 F. Supp. 2d 907 (N.D. Ill. 2009). The court then dismissed the suit, ruling that only an adjustment board can provide Hughes with a remedy.

Hughes asks us to overrule *Graf*, and we conclude that this is the appropriate course. Explaining why requires a brief turn from the Railway Labor Act to other parts of labor law.

Not long after *Graf*, we extended its holding throughout labor-relations law, concluding in *Lingle v. Norge Division of Magic Chef, Inc*., 823 F.2d 1031 (7th Cir. 1987) (en banc), that the Labor-Management Relations Act completely preempts retaliatory-discharge claims nominally based on state law. As with *Graf* and Hughes's claim, the state law in question was the rule in Illinois that prohibits retaliation against workers who exercise their legal remedies against employers. Our decision had a short life, however. The Supreme Court reversed, 486 U.S. 399 (1988), holding that a retaliatory-discharge suit resting on state law is a real state-law claim, not a federal claim in disguise. The Justices concluded that a retaliatory-discharge claim is preempted if it cannot be resolved without construing a collective bargaining agreement, but this is normal preemption—that is, a defense to be asserted in the original forum rather than a rule that the claim itself must rest on federal law. It is easy to see how a retaliatory-discharge claim could be

resolved without reference to a labor agreement. Suppose a flight attendant asserted that the reason she was sacked was a workers' compensation claim, while the employer asserted that the reason was the flight attendant's failure to give passengers the required safety briefing. The question for decision would be who was telling the truth, not what a collective bargaining agreement provided.

The Supreme Court's decision in *Lingle* pulls the rug out from under *Graf*, unless some material difference between the Railway Labor Act and the Labor-Management Relations Act makes *Lingle*'s approach inapplicable to the RLA. *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246 (1994), considered that possibility. Norris, a mechanic discharged after he had refused to sign an aircraft's maintenance record, sued under state law, contending that the real reason for the discharge was his insistence that the air carrier use proper maintenance procedures. The Court first held that a claim resting entirely on state law need not be resolved by an adjustment board under the RLA; instead, the opinion states, "the category of minor disputes contemplated by [45 U.S.C.] §151a are those that are grounded in" a collective bargaining agreement, 512 U.S. at 256, and that the RLA's procedures do "not pre-empt causes of action to enforce rights that are independent of the CBA." *Ibid*. *Hawaiian Airlines* went on to apply *Lingle* to the RLA, stating, *id*. at 260, that "[t]he pre-emption standard . . . —that a state-law cause of action is not pre-empted by the RLA if it involves rights and obligations that exist independent of the CBA—is virtually identical to the pre-emption

standard the Court employs in cases involving §301 of the Labor-Management Relations Act", 29 U.S.C. §185. *Lingle* held that a retaliatory-discharge claim under Illinois law "involves rights and obligations that exist independent of the CBA". 512 U.S. at 260. Putting *Lingle* together with *Hawaiian Airlines* means that the RLA does not completely preempt retaliatory-discharge suits. This leaves *Graf* without support.

Since *Hawaiian Airlines*, we have decided two retaliatory-discharge suits against employers covered by the Railway Labor Act. The first of these, *Westbrook v. Sky Chefs, Inc.*, 35 F.3d 316 (7th Cir. 1994), concluded that the state-law claim was independent of the CBA and not preempted, completely or otherwise. The second, *Monroe v. Missouri Pacific R.R.*, 115 F.3d 514 (7th Cir. 1997), held that the state-law claim could not be resolved without construing the CBA and thus was preempted. Neither decision mentioned *Graf*; likely the litigants and judges all assumed that *Graf* did not survive *Hawaiian Airlines*. *Westbrook* was removed under the diversity jurisdiction, so the choice between normal and complete preemption did not matter. The panel in *Monroe* did not say whether the suit had been removed under the diversity jurisdiction or the federal-question jurisdiction; perhaps the parties did not make anything of that difference. This leads United to contend that *Monroe* must be understood as a complete-preemption case and that *Graf* therefore retains vitality. Yet the absence of a discussion is just silence. Even when the issue concerns subject-matter jurisdiction, a topic passed over without discussion has not been resolved. *Steel Co. v. Citizens for a*

*Better Environment*, 523 U.S. 83, 91 (1998); *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37–38 (1952). *Monroe* did not hold that the RLA completely preempts any category of state-law claims; it held only that a particular claim was preempted under the approach of *Lingle* and *Hawaiian Airlines*.

The three other circuits that have considered this subject since *Hawaiian Airlines* have concluded that the RLA does not completely preempt retaliatory-discharge claims under state law. *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009); *Sullivan v. American Airlines, Inc.*, 424 F.3d 267, 277 (2d Cir. 2005); *Geddes v. American Airlines, Inc.*, 321 F.3d 1349 (11th Cir. 2003). To the extent these decisions rest on a belief that complete preemption is possible only when federal courts supply a remedy, we are skeptical. Much conduct that is arguably forbidden as an unfair labor practice by the National Labor Relations Act, or arguably protected by that statute, is covered by the complete-preemption doctrine. See generally *Sears, Roebuck & Co. v. San Diego Council of Carpenters*, 436 U.S. 180 (1978). Yet federal courts do not entertain suits about unfair labor practices; only the National Labor Relations Board can adjudicate disputes under sections 7 or 8 of the NLRA. A suit alleging an unfair labor practice filed in state court, and removed to federal court, will be dismissed rather than resolved on the merits. This establishes that complete preemption does not depend on the ability of the federal courts to supply a remedy. But it is unnecessary to agree or disagree with all of the reasons given in *Geddes, Sullivan,* and *Moore-Thomas; Lingle* and

*Hawaiian Airlines* show that the results of those decisions are correct.

*Graf*'s holding that the RLA completely preempts retaliatory-discharge suits under state law is overruled. (Other parts of *Graf* are unaffected by this conclusion.) Because this conclusion is compelled by decisions of the Supreme Court after *Graf*, circulation under Circuit Rule 40(e) is unnecessary. This suit must be remanded to state court, because both Hughes and United are citizens of Illinois. United submits that Hughes cannot prevail unless the court considers, and rejects, its contention that the collective bargaining agreement required her discharge after three years on medical leave. If "the state-law claim is dependent on the interpretation of a CBA", *Hawaiian Airlines*, 512 U.S. at 262, then her claim is preempted. But the state judiciary (subject to review by the Supreme Court of the United States) is the right forum for United's argument on that subject; it would be inappropriate for us to discuss it.

The judgment is vacated, and the case is remanded to the district court with instructions to remand the litigation to state court.